UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

GAN H. ENG, TAN F. LAM, KWOK C. TANG, JUN Q.       07 CV 3909 (MGC)
CHAN, KAM C. HO, XIAO Z. ZHANG, YAT C. CHAN,
MING HO, RONG J. CHEN, JIAN Z. LUO, LE Y. CHEN,
JIAN B. YAN, SU C. JIANG, XIU H. JIANG, XIU LIN,     (*Filed Electronically*)
TAK S. CHENG, SHU C. HUANG, MEI J. HUANG and
OY K. KWAN,

Plaintiffs,

-against-

THE NICE RESTAURANT, INC., BEN H. TOM, MEE
MEE TOM a.k.a. MEE MEE M. TOM a.k.a. MEE MEE
MEI, YAN SHING CHAN, CHEUNG YONG, SHING SI
SUN, SHEN PING CHU, JOHN TAM, SI KIT WU, SI
HUNG WU, CHUI BAI TAM, and JIMMY MOY a.k.a.
JIMMY MUI a.k.a. JIMMY MEI,

Defendants.

-----------------------------------------------------------------------X


## DEFENDANT WILLIAM TAM'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT


KEATING & McHUGH
Attorneys for Defendant William Tam
30 Vesey Street, 15th Floor
New York, NY 10007
(212) 608-6557 (v)
(866) 408-1843 (f)

## INTRODUCTION

Plaintiffs, certain employees of Defendant The Nice Restaurant, Inc. (hereinafter the "Restaurant"), filed the instant action pursuant to the Fair Labor Standards Act (hereinafter the "FLSA") and the New York Labor Law.  Plaintiffs allege that they were not paid minimum wages and overtime wages by the Restaurant.  They now seek to recover these additional wages and certain other compensation from the Restaurant and each of the individual defendants who they have erroneously alleged were "owners and managers" of the Restaurant from "it's opening until 2005." (Complaint, ¶26).[1]

As shown below, Defendant Tam is entitled to summary judgment because the undisputed facts establish that (1) Tam is not an "employer" within the meaning of the FLSA and the Labor Law, and therefore has no liability to Plaintiffs pursuant to the FLSA or the Labor Law for wages allegedly unpaid by the Restaurant; and (2) that Plaintiffs' claim for unpaid wages and damages for the period pre-dating May 18, 2001, is barred by the applicable Statute of Limitations.[2]

## THE FACTS

On May 18, 2007, plaintiffs filed this action against eleven individuals, including William Tam, sued herein as Chui Bai Tam, indiscriminately alleging, "on information and belief," that each of the eleven was a "manager" of the Nice Restaurant and the

---

[1]  A true copy of the Complaint is Exhibit 3 annexed to the accompanying affirmation of John F. Keating.

[2]  The Court held a pre-motion conference on September 6, 2007.  At that time, the Court permitted the filing of this motion following the deposition of Defendant Tam.  Mr. Tam's deposition was taken on February 26, 2008.  References to the transcript of Mr. Tam's deposition appear herein as "Tam Dep. at __" and the referenced pages are annexed to the Keating Affirmation as Exhibit 4.

plaintiffs' employer. Plaintiffs' complaint, as it relates to William Tam, provides in pertinent part:

> [Tam], on information and belief, was an owner and manager of The Nice Restaurant Inc. from the opening of the restaurant until on or about Thanksgiving 2005. On information and belief, until on or about Thanksgiving 2005, he had the power to hire and fire employees at the Nice Restaurant, establish their wages, set their work schedules, and maintain their employment records.

(Exhibit 3, Complaint, ¶26).

The Nice Restaurant was organized by Peter Lee (Exhibit 4, Tam Dep. at 52), who was the general manager of the Restaurant from its inception until Mee Mee Tom became president of the Restaurant in or about 1996. (Exhibit 4, Tam Dep. at 35, 44, 52).

Defendant William Tam is a certified public accountant and a partner in the firm of Tam & Nester.[3]   The incontrovertible evidence is that, contrary to the erroneous allegations in Plaintiff's Complaint, Tam has:

- never been a manager of the Restaurant;

- never been an employee of the Restaurant;

- never hired or fired any employee of the Restaurant;

- never had the power to hire or fire employees of the Restaurant;

- never established, or had the power to establish, the wages or work schedules of the employees of the Restaurant;

- has not owned any stock of the Restaurant since *January 26, 1996*; and

---

[3]   Tam testified that he was born in Hong Kong and immigrated to the United States in 1968, following his graduation from high school in Hong Kong. (Exhibit 4, Tam Dep. at 10). Thereafter, Tam attended Wagner and Pace Colleges, where he earned a degree in accounting. (Exhibit 4, Tam Dep. at 10).  Tam worked his way through college by washing dishes. (Exhibit 4, Tam Dep. at 12).   After college, he earned a Master's degree in finance from New York University. (Exhibit 4, Tam Dep. at 11).

- has not been a director or officer of the Restaurant since *July 1, 1996.*

(Affidavit of William Tam sworn to March 28, 2008, ¶¶ 4-11, 16-17) (hereinafter the "Tam Aff.")).

To be sure, *prior to July 1, 1996*, Tam owned 7 shares of stock of the Restaurant, representing less than ten percent of the shares issued and outstanding (Tam Aff. ¶16), and held the position of secretary of the corporation.  On January 26, 1996, Tam transferred all of his shareholdings to Melina Tam, his spouse, who is not a party to this action.[4] (Exhibit 4, Tam Dep. at 35, 50).  On July 1, 1996, Tam resigned the position of corporate secretary as well as director.[5]  (Exhibit 4, Tam Dep. at 50).

Since Tam's resignation as secretary and director on July 1, 1996, over ten years before Plaintiffs filed their complaint, Tam's sole involvement with the Restaurant has been in his capacity as a certified public accountant with the accounting firm of Tam & Nester. (Tam Affidavit, ¶17).  Tam & Nester was engaged by the Restaurant to prepare the Restaurants' tax returns, for which the firm was paid a retainer,[6] from the opening of the Restaurant through the 2005 tax year.  (Exhibit 4, Tam Dep. at 25-26, 63).  The services that Tam & Nester rendered to the Restaurant were no different than the

---

[4]   Melina Tam sold all of the shares to Mee Mee Tom in 2005. (Exhibit 4, Tam Dep. at 44). Melina Tam was never an employee of the Restaurant (Exhibit 4, Tam Dep. at 41) and never came to the Restaurant.  (Exhibit 4, Tam Dep. at 34).

[5]   Tam testified that he transferred his shares to his spouse, and thereafter resigned as corporate secretary, when Ben Tom and Mee Mee Tom began contemplating a divorce, and Tam could find no other buyer for the shares.  (Exhibit 4, Tam Dep. at 31, 33).

[6]   The terms of Tam & Nester's engagement are set forth in a letter dated December 28, 1985. (Exhibit 4, Tam Dep. at 55, and Ex 1 to the Tam Aff.).

accounting services that Tam & Nester performed for hundreds of other clients during that period.[7] (Tam Aff., ¶12).

Tam has had absolutely nothing to do with the day-to-day management or operation of the Restaurant, nor specifically anything to do with hiring, firing, setting of wages or work schedules.

- Tam did not hire or fire anyone, or set work schedules. (Exhibit 4, Tam Dep. at 119, 126).

- Tam did not maintain employee files. (Exhibit 4, Tam Dep. at 60).

- Following his resignation as corporate secretary and director in 1996, Tam attended board meetings no more than once a year, and then only in his capacity as accountant for the corporation. (Exhibit 4, Tam Dep. at 54).

- And, even as the Restaurant's accountant, he was not at the restaurant "ninety-nine percent of the time." (Exhibit 4, Tam Dep. at 51). He was in the Restaurant for approximately 15 minutes, twice a month on average, primarily to collect tax related mail and/or tax related information. (Exhibit 4, Tam Dep. at 58-59, 60).

- Tam had no authority to, and did not, sign payroll or other checks on behalf of the corporation. (Exhibit 4, Tam Dep. at 68).

- Tam's involvement in the preparation of the payroll was purely ministerial. He computed the payroll based upon information

---

[7]  Ninety-five percent of Tam & Nester's clients are non-Chinese owned businesses. (Exhibit 4, Tam Dep. at 13).  Prior to being retained by the Nice Restaurant, Tam & Nester had been engaged by only one other restaurant, the China Royal. (Exhibit 4, Tam Dep. at 14-15).

regarding employee hours and wage rates supplied to him by the Restaurant (Exhibit 4, Tam Dep. at 72-73, 74) and prepared a withholding statement for each employee based upon the information provided and U. S. Department of Labor guidelines. (Exhibit 4, Tam Dep. at 85-86, 90-91, 98, 110). The services that Tam provided to the Restaurant are no different from that provided by ADP or any other payroll processing company. (Exhibit 4, Tam Dep. at 91).

- The payroll checks themselves were prepared and signed by Mee Mee Tom, the president of the Restaurant.[8]  (Exhibit 4, Tam Dep. at 79-80, 85).

As shown below, under controlling precedent, Tam is not an "employer" within the meaning of the FLSA and the Labor Law as a matter of law, and he is not liable for any alleged unpaid wages.  The wholly unfounded complaint against him should be summarily dismissed.

## ARGUMENT

## POINT I

## TAM IS NOT A STATUTORY "EMPLOYER" AS A MATTER OF LAW

To be liable under the FLSA and the New York Labor Law, one must be an "employer."  Section 203(d) of the Fair Labor Standards Act, 29 U.S.C 203(d), defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The Labor Law similarly defines an

---

[8]  Although Plaintiffs have named Mee Mee Tom as a defendant, plaintiffs have not served her since this case was commenced nearly one year ago.

"employer" as encompassing any "person employing any [employee]." N.Y. Labor L. §
2(6).

The question whether a particular defendant is an employer is a question of law.
*Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995) ("The question whether a particular
defendant is an employer under the Equal Pay Act is a question of law").

Whether one qualifies as an "employer" under the definitions depends on
"whether the alleged employer possessed the power to control the workers in question . . .
with an eye to the `economic reality' presented by the facts of each case." *Herman v RSR
Sea Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir.1999) (*quoting Goldberg v. Whitaker House
Coop.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961)); *Carter v. Dutchess
Community College*, 735 F.2d 8, 12 (2d Cir. 1984) ("the overarching concern is whether
the alleged employer possessed the power to control the workers in question").

Factors the courts consider when examining the "economic reality" of a particular
situation include "`whether the alleged employer (1) had the power to hire and fire the
employees, (2) supervised and controlled employee work schedules or conditions of
employment, (3) determined the rate and method of payment, and (4) maintained
employment records.'" *Herman v. RSR Sec. Svcs. Ltd.,* 172 F.3d 132, 139 (2d Cir.1999)
(*quoting Carter v. Dutchess Comm. Coll.,* 735 F.2d 8, 12 (2d Cir.1984)).

In this case, Tam did none of these things and had no power to control the
workers in question, as his deposition testimony establishes.

> Q. [By Mr. Kimmerling] My question, Mr. Tam is
> what role, if any, did you play in the hiring of any of the
> managers of the restaurant?
>
> A.      No role at all.

Q.      Were you at all consulted by any of the personnel at the restaurant in regard to the hiring of managers?

A.      No.

Q.      Did you have a role in the hiring of any employees in the restaurant?

A.      No.

Q.      Do you have any role in anyone being fired from the restaurant?

A.      No.

(Exhibit 4, Tam Dep. at 119).

Q.      Did you have any role in setting the hourly wages of the employees in the restaurant?

A.      No.

Q.      Did you have any discussions with anybody in the restaurant about the hourly wages that were being paid to the workers?

A.      Say again.

Q.      Did you have any discussion with anyone in the restaurant about the hourly wages that were being paid to the workers other than when Miss Tom or someone else at the restaurant told you about it?

A.      No.

(Exhibit 4, Tam Dep. at 126).

Equally significantly, Tam did not hire or fire any of *the Plaintiffs* (Tam Affidavit, ¶¶7-8), and the Plaintiffs do not allege that he did. Nor do any of the Plaintiffs assert that Tam established *their* work schedules or wages, and he did not. (Tam Aff., ¶11).

In short, Tam played no role in the hiring and firing of any of the Plaintiffs or other employees of the Restaurant, or in the setting of any of the Plaintiffs' hours or wages.  Under applicable precedent, Tam is not an "employer" as a matter of law. *See, e.g.*, *Messmer v. Colors in Bloom, Inc*., 67 Fed. Appx. 719   (3rd Cir. 2003) (affirming dismissal of husband of owner of floral shop given that husband did not own stock, never worked in shop and was not an officer or director); *Chao v. Vidtape, Inc*., 196 F.Supp.2d 281 (E.D.N.Y. 2002) (father of the President and sole shareholder of the corporate employer was not an "employer" under the FLSA even though employees thought he was "the boss", because he did not hold an integral role in the corporate employer's operations, or in setting work policies, schedules or conditions of employment and was not an owner, shareholder, or officer of the corporate defendant); *Johnson v. A.P. Products, Ltd*., 934 F.Supp. 625, 629 (S.D.N.Y., 1996) (dismissal of claim against human resources manager where there was no allegation that manager exercised any control over plaintiff); *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986) (where president of corporation was not responsible for employment contract and was not involved in the day-to-day operation of the facility, the president "lacked the operational control necessary for the imposition of liability as an "employer"); *Donovan v. Sabine Irr. Co., Inc*., 531 F.Supp. 923, 929 (W.D. La. 1981), aff'd, 695 F.2d 190 (5th Cir. 1983) (vice president who did not control office was not an employer); *Reed v MycoPharma*, 2000 U.S. Dist. LEXIS 11539 (E.D. Ill. 2000) (part time president was not an employer where he did not directly supervise employees).

Moreover, where as here, it is undisputed that day-to-day operational control is lacking, summary judgment is proper.  *See, e.g.*, *Powell v. Carey Intern., Inc*., 483

F.Supp.2d 1168, 1183-1184 (S.D. Fla., 2007) (where Plaintiffs offered no evidence, *based on personal knowledge*, that officer had the power to hire and fire employees of subsidiary, controlled the drivers' schedules, determined their base rate or fixed gratuity, or had any involvement with employee records, Plaintiffs' conclusory statements could not defeat summary judgment and did not establish that officer had operational control or that there was a triable issue as to whether officer was a statutory employer); *Jankowski v. Castaldi*, 2006 U.S. Dist. LEXIS 4237, *26 (E.D.N.Y. 2006)(granting summary judgment to defendant who did not participate in the business)..

Tam is therefore entitled to summary judgment dismissing the complaint against him in its entirety.  It would be unprecedented to hold a professional accountant, who is neither an officer nor involved in the day-to-day management of the business, liable as an employer.

## POINT II

### PLAINTIFF'S CLAIMS FOR PRE-MAY 18, 2001 WAGES ARE TIME BARRED

The FLSA sets forth a two-year statute of limitations, unless the alleged employer's violation was willful, in which case the statute of limitations is extended to three years. 29 U.S.C. § 255(a).[9]  The analogous New York statute provides for a six year statute of limitations for recovery. Labor Law §198(3).[10]

---

[9]  The Supreme Court has stated that an employer's violation is willful within the meaning of the Fair Labor Standards Act when it can be shown that the employer knew, or recklessly disregarded, that it was acting in violation of the Act.  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  A negligent failure to pay the proper wages does not rise to the level of reckless disregard.

[10]  Labor Law §198(3) provides: "Notwithstanding any other provision of law, an action to recover upon a liability imposed by this article must be commenced within six years.  All employees shall have the right to recover full wages, benefits and wage supplements accrued

Given that it is undisputed that Plaintiff's complaint was filed on May 18, 2007, any claim under the FLSA for unpaid wages for any period pre-dating May 18, 2004, is time barred.  Similarly, any claim under the New York Labor Law for unpaid wages for any period pre-dating May 18, 2001 is time barred.  Tam is, therefore, entitled to summary judgment dismissing the time-barred claims.  *See, e.g.*, *Powell v. Carey Intern., Inc.*, 483 F.Supp.2d 1168, 1183-1174-76 (S.D. Fla., 2007) (dismissing time barred claims); *Claeys v. Gandalf, Ltd.*, 303 F.Supp.2d 890 (S.D. Ohio, 2004) (same).

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the referenced matter is ripe for summary adjudication and that the complaint should be dismissed as to Defendant Tam because the undisputed facts establish that he is not an "employer" within the meaning of the FLSA and the New York Labor Law as a matter of law.  There is simply no authority (or rationale) for holding a professional accountant, who prepared tax filings for a business in his capacity as an independently retained public accountant, but who is not an officer and who has never been involved in the day-to-day management of the business, personally liable under the FLSA or the Labor Law for unpaid wages allegedly owed to the employees of the business.

Dated: New York, New York
March 27, 2008

KEATING & McHUGH

By  /s/ John F. Keating
Peter J. McHugh (PM9877)
John F. Keating (JK5354)
Attorneys for Defendant
WILLIAM TAM

---

during the six years previous to the commencing of such action, whether such action is instituted by the employee or by the commissioner.

sued herein as Chui Bai Tam
30 Vesey Street, 15th Floor
New York, NY  10007
212 608 5657 (v)
866 408 1843 (f)
pjm@keatingmchugh.com
jfk@keatingmchugh.com