UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GAN H. ENG, TAN F. LAM, KWOK C. TANG, JUN Q. CHAN, KAM C. HO, XIAO Z. ZHANG, YAT C. CHAN, MING HO, RONG J. CHEN, JIAN Z. LUO, LE Y. CHEN, JIAN B. YAN, SU C. JIANG, XIU H. JIANG, XIU LIN, TAK S. CHENG, SHU C. HUANG, MEI J. HUANG, and OY K. KWAN,<br><br>                Plaintiffs,<br><br>– against –<br><br>THE NICE RESTAURANT, INC., BEN H. TOM, MEE MEE TOM a.k.a. MEE MEE M. THOM a.k.a. MEE MEE MEI, YAN SHING CHAN, CHEUNG YONG, SHING SI SUN, SHEN PING CHU, JOHN TAM, SI KIT WU, SI HUNG WU, CHUI BAI TAM, and JIMMY MOY a.k.a. JIMMY MUI a.k.a. JIMMY MEI,<br><br>                Defendants. | ECF Case<br><br>1:07-CV-03909 (MGC) |

**DECLARATION OF JIAN Z. LUO IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) AN EXTENSION OF TIME FOR SERVICE OF SUMMONS AND COMPLAINT; AND (2) SERVICE BY PUBLICATION**

 

Kenneth Kimerling
ASIAN AMERICAN LEGAL DEFENSE
   AND EDUCATION FUND
99 Hudson Street
New York, New York 10013
(212) 966-5932

Attorneys for Plaintiffs

**DECLARATION OF JIAN Z. LUO**

I, Jian Z. Luo, declare under penalty of perjury the following:

1.    I am a plaintiff in the above-captioned matter and submit this declaration in support of plaintiffs' Gan H. Eng, Tan F. Lam, Kwok C. Tang, Jun Q. Chan, Kam C. Ho, Xiao Z. Zhang, Yat C. Chan, Ming Ho, Rong J. Chen, Jian Z. Luo, Le Y. Chen, Jian B. Yan, Su C. Jiang, Xiu H. Jiang, Xiu Lin, Tak S. Cheng, Shu C. Huang, Mei J. Huang, and Oy K. Kwan ("Plaintiffs") motions (1) to enlarge the time for service of summons and complaint, and (2) service by publication.

2.    At all relevant times, I was an employee at The Nice Restaurant (the "Restaurant"), where defendants Mee Mee Tom and Yan Shing Chan were managers.

3.    On or about February 1, 2007, Plaintiffs held a press conferenceto complaint about our employment situation at the Restaurant. We were unhappy about our inadequate wages and unpaid overtime and the taking of our tips by management. We also made plans to file a lawsuit against Nice Restaurant and its management.

4.    In response to our press conference and litigation plans, Defendant Mee Me Tom demanded that we not file the lawsuit. Tom stated that if we agreed not to sue, she would pay an out-of-court, aggregate settlement to be distributed to us in or around late May 2007. Tom emphatically maintained that she would never pay us if we did not acquiesce to her demand and filed the lawsuit.

5.    Plaintiffs were concerned about the Tom's threat. Chiefly relying on defendants' promise to settle outside court, we agreed not to file a suit.

6. On May 16, 2007, around the time we were supposed to receive the aggregate settlement from Tom, she closed the Restaurant without providing any prior notice to any of the Plaintiffs.

## Defendant Mee Mee Tom

7. Prior to the closing of Nice Restaurant on May 16, 2007, I (along with many of the plaintiffs) frequently observed Tom (and her daughter) in close proximity to an apartment located at 77 Chrystie Street, Apartment 4, New York, New York 10002, where, on information and belief, Tom resided. Tom frequently asked Nice Restaurant employees to store the restaurant's documents in the basement of the building at that address.

8. Prior to May 16, 2007, I (along with many of the plaintiffs) never had trouble reaching Tom by telephone at 212-226-3191.

9. Since May 16, 2007, I have been unable to contact Tom.

10. On the morning of May 16, 2007, I (along with co-plaintiff Ming Ho) attempted to locate Tom, the principal shareholder and on-site manager of Nice Restaurant. We visited Tom's apartment located at 77 Chrystie Street, Apartment 4, New York, New York 10002 two times that day and rang the doorbell several times on each visit. No one ever answered the door. After the first unsuccessful visit, we called Tom's apartment, but nobody answered the phone and there was no answering machine. We returned for a second visit in the afternoon and again rang the doorbell several times. Again, there was no answer. We then resolved to park across the street and camp out with the hope of catching Tom (or her daughter) either returning or leaving her home. We stayed until 11:00 PM that night, but did not see Tom (or her daughter).

11. The next morning, May 17, 2007, we returned to Tom's apartment, but were just as unsuccessful as the day before. We rang the doorbell several times and directed numerous calls to her number, but received no answer.

12. Later that day, I (accompanied by co-plaintiffs Ho, Xiao Z. Zhang, and Gan H. Eng) went to Tom's daughter's workplace—P.S. Hernando Desoto School, located at 143 Baxter Street, New York, New York, 10013. We waited there to look for her until all the other students and teachers were gone, but she was nowhere to be found. We later learned from the school's principal that Tom's daughter no longer worked at the school.

13. The next day, on May 18, 2007, Plaintiffs filed their Complaint in this Court.

14. For the next few weeks, I returned to Tom's apartment twice a day to find Tom. Each time, I would ring the door bell and wait for an answer. No one ever did.

15. Towards the end of May 2007, after we had filed our court complaint, Plaintiffs picketed outside what was formerly The Nice Restaurant, some customers who knew Tom well informed us that she had fled to Hong Kong.

16. To date, I have continued to look for Tom, but remain unsuccessful.

<u>Defendant Yan Shing Chan</u>

17. In or around June or July 2007, defendant Yan Shing Chan found out that Plaintiffs had served several of the defendants. Chan subsequently called plaintiff Xiao Z. Zhang and me to ask us not to serve him with the Complaint and Summons. Chan stated that he would cooperate with Plaintiffs and find a buyer to purchase and reopen the Restaurant so that Plaintiffs could return to work.

3

18. On or around the end of May 2007, plaintiff Xiao Z. Zhang and I met with Chan and Shing Lai, a person interested in investing in the Restaurant.

19. Near the end of June 2007, in an effort to serve Chan, I called Chan and asked him if he would be willing to pick up the Complaint and Summons (to accept service of process). Chan was non-responsive to that request. Instead, Chan told me that he could not afford to pay the damages Plaintiffs sought in the Complaint. Chan also admitted that any attorney that he could hire would not be able to help him win the case. Chan stated that he would rather give Plaintiffs money than to pay an attorney—an expense he could not afford—to fight a losing battle.

20. Near the end of June 2007, Chan called me to ask me to meet him. I met Chan in his car. Chan said that he did not want to fight the lawsuit against him and that he preferred to use the money that he would have to pay an attorney to the Plaintiffs.

21. At no time during this series of correspondence did Chan disclose his location or agree to accept or waive service of process. Indeed, Chan eventually became contentious, declaring: "My IQ is very high. You cannot locate me. Keep in touch by phone!"

///

I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Dated: New York, New York

August 12, 2008

By: _____
Jian Z. Luo, Plaintiff

## TRANSLATOR'S CERTIFICATE

I, Wing Lam, hereby swear under penalty of perjury that I am fluent in both Chinese and English and that I have accurately translated plaintiff Jian Z. Luo's recitation of the facts from Chinese to English for the purposes of this Declaration.

Dated: New York, New York

August 12, 2008

By: _____
Wing Lam
CHINESE STAFF AND
  WORKERS' ASSOCIATION
55 Chrystie St., Rm. 201
New York, NY 10002
(212) 334-2333

5