UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GAN H. ENG, TAN F. LAM, KWOK C.
TANG, JUN Q. CHAN, KAM C. HO,
XIAO Z. ZHANG, YAT C. CHAN, MING
HO, RONG J. CHEN, JIAN Z. LUO, LE
Y. CHEN, JIAN B. YAN, SU C. JIANG,
XIU H. JIANG, XIU LIN, TAK S.
CHENG, SHU C. HUANG, MEI J.
HUANG, and OY K. KWAN,

          Plaintiffs,

        – against –

THE NICE RESTAURANT, INC., BEN
H. TOM, MEE MEE TOM a.k.a. MEE
MEE M. THOM a.k.a. MEE MEE MEI,
YAN SHING CHAN, CHEUNG YONG,
SHING SI SUN, SHEN PING CHU,
JOHN TAM, SI KIT WU, SI HUNG WU,
CHUI BAI TAM, and JIMMY MOY a.k.a.
JIMMY MUI a.k.a. JIMMY MEI,

          Defendants.

ECF Case

1:07-CV-03909 (MGC)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTIONS FOR (1) EXTENSION OF TIME FOR SERVICE OF SUMMONS AND
COMPLAINT; AND (2) SERVICE BY PUBLICATION**

Kenneth Kimerling
ASIAN AMERICAN LEGAL DEFENSE
   AND EDUCATION FUND
99 Hudson Street
New York, New York 10013
(212) 966-5932

Attorneys for Plaintiffs

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

PRELIMINARY STATEMENT ........................................................................... 1

SUMMARY OF MOTIONS................................................................................. 1

STATEMENT OF FACTS .................................................................................. 2

    I.      PROCEDURAL HISTORY........................................................... 2

    II.     FACTUAL BACKGROUND...................................................... 2

          A.     Service Attempts on Tom. ............................................... 3

          B.     Service Attempts on Chan. ............................................. 4

ARGUMENT ...................................................................................................... 7

    I.      MOTION TO ENLARGE TIME FOR SERVICE OF SUMMONS
          AND COMPLAINT...................................................................... 7

          A.     There Exists Sufficient Good Cause to Justify an Enlargement of
               Time for Service. ............................................................ 7

          B.     Even if This Court Does Not Find Good Cause, it May
               Nevertheless Enlarge the Time for Service in its Discretion. .......... 9

          C.     That Plaintiffs Improperly Served Defendant Chan Does Not
               Necessitate Dismissal of the Complaint. ...................................... 12

    II.     MOTION FOR ALTERNATIVE SERVICE OF SUMMONS AND
          COMPLAINT. ........................................................................... 14

          A.     Because Other Methods of Service are Impracticable, This Court
               Should Permit Plaintiffs to Serve Defendants Tom and Chan by
               Alternative Means. ........................................................ 14

               1.     Personal service is not practicable. .................................... 15

               2.     Substitute service is not practicable.................................... 15

               3.     "Nail and mail" service is not practicable.......................... 16

## <u>TABLE OF AUTHORITIES (CONTINUED)</u>

B.    <u>This Court Should Permit Plaintiffs to Serve Defendants Tom and Chan by Publication</u>. ...............................................................18

CONCLUSION..................................................................................................................20

# TABLE OF AUTHORITIES

PAGE(S)

FEDERAL CASES

*AIG Managed Mkt. Neutral Fund v. Askin Capital Management, L.P.*,
    197 F.R.D. 104 (S.D.N.Y. 2000) ......................................................................9, 11

*Am. Int'l Tel. v. Mony Travel Serv.*,
    203 F.R.D. 95 (S.D.N.Y. 2001) .............................................................................7

*Bender v. Gen. Servs. Admin.,*
    No. 05-Civ.-6459, 2006 WL 988241 (S.D.N.Y. Apr. 14, 2006) ...........................12

*Bogle-Assegai v. Connecticut*,
    470  F.3d 498 (2d Cir. 2006)................................................................................10

*E. Refractories Co., Inc. v. Forty Eight Insulations, Inc.*,
    187 F.R.D. 503 (S.D.N.Y. 1999) ...........................................................................7

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64 (1938)...............................................................................................14

*Finkelman v. New York State Police*,
    No. 06-CV-8705 (JSR), 2008 WL 821833 (S.D.N.Y. Mar. 26, 2008)...................8

*Henderson v. United States*,
    517 U.S. 654 (1996).............................................................................................10

*Mejia v. Castle Hotel*, *Inc.*,
    164 F.R.D. 343 (S.D.N.Y. 1996) .........................................................................10

*In re Motel 6 Sec. Litig.*,
    No. 93-Civ.-2183 (JFK), 1995 WL 431326 (S.D.N.Y. July 20, 1995) ..................8

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)........................................................................................18, 19

*Osrecovery, Inc. v. One Group Int'l, Inc.*,
    234 F.R.D. 59 (S.D.N.Y. 2005) .......................................................................7, 10

## TABLE OF AUTHORITIES (CONTINUED)

<u>PAGE(S)</u>

*Walker v. City of Hutchinson*,
  352 U.S. 112 (1956)........................................................................................18

*Zapata v. City of New York*,
  502 F.3d 192 (2d Cir. 2007).............................................................................10

*Zeballos v. Tan*,
  No. 06-CV-1268 (GEL), 2006 WL 1975995 (S.D.N.Y. July 10, 2006)................12

### STATE CASES

*Astrologo v. Serra*,
  240 A.D.2d 606 (2d Dep't 1997).......................................................................17

*Dobkin v. Chapman*,
  21 N.Y.2d 490 (1968) ................................................................................18, 19

*Harkness v. Doe*,
  261 A.D.2d 846 (4th Dep't 1999) .....................................................................18

*Home Fed. Sav. Bank v. Versace*,
  252 A.D.2d 480 (2d Dep't 1998)........................................................................17

*Kelly v. Lewis*,
  632 N.Y.S.2d 186 (2d Dep't 1995) ....................................................................14

*Liebeskind v. Liebeskind*,
  86 A.D.2d 207 (1st Dep't 1982), *aff'd*, 58 N.Y.2d 858 (1983)............................14

*Tremont Fed. Sav. and Loan Assoc. v. Ndanusa*,
  144 A.D.2d 660 (2d Dep't 1988)........................................................................19

### FEDERAL RULES OF CIVIL PROCEDURE

FED. R. CIV. P. 4(e) ..............................................................................................14

FED. R. CIV. P. 4(m) ...................................................................................... *passim*

### NEW YORK CIVIL PRACTICE LAW AND RULES

N.Y. C.P.L.R. 308(1) (McKinney 2001) ..............................................................15

## TABLE OF AUTHORITIES (CONTINUED)

PAGE(S)

N.Y. C.P.L.R. 308(2) (McKinney 2001) ...........................................................................15

N.Y. C.P.L.R. 308(4) (McKinney 2001) ...........................................................................16

N.Y. C.P.L.R. 308(5) (McKinney 2001) ...........................................................................14

SECONDARY AUTHORITY

FED. R. CIV. P. 4(m) advisory committee's note.............................................................8, 9

2 WEINSTEIN ET AL., NEW YORK CIVIL PRACTICE: CPLR ¶ 315.02 & 315.03 (2d
    ed. 2005) ...................................................................................................................19

## PRELIMINARY STATEMENT

Plaintiffs Gan H. Eng, Tan F. Lam, Kwok C. Tang, Jun Q. Chan, Kam C. Ho, Xiao Z. Zhang, Yat C. Chan, Ming Ho, Rong J. Chen, Jian Z. Luo, Le Y. Chen, Jian B. Yan, Su C. Jiang, Xiu H. Jiang, Xiu Lin, Tak S. Cheng, Shu C. Huang, Mei J. Huang, and Oy K. Kwan ("Plaintiffs") submit this memorandum of law in support of their:  (1) motion for an extension of time for service of Summons and Complaint upon defendants Mee Mee Tom and Yan Shing Chan, pursuant to Rule 4 of the Federal Rules of Civil Procedure; *and* (2) motion for service of Summons and Complaint by publication upon defendants Mee Mee Tom and Yan Shing Chan, pursuant to section 308, paragraph five of the New York Civil Practice Law and Rules ("CPLR").

## SUMMARY OF MOTIONS

Despite their diligent efforts, Plaintiffs have been unable to serve defendants Mee Mee Tom ("Tom") and Yang Shing Chan ("Chan") with copies of the Summons and Complaint because the defendants have successfully evaded service of process.  Tom with her husband was the principal shareholder of the The Nice Restaurant and one of its managers.  Chan was the General Manager of the restaurant.

Plaintiffs have attempted service on each of the defendants at their last known residential addresses on several occasions, but Tom and Chan were never there and it was uncertain (at that time) whether they still resided at those addresses.  Plaintiffs have also tried calling the defendants to find out their location and make the necessary arrangements to serve them.  Tom has not answered her phone since the Complaint was filed, and she has not returned any of Plaintiffs' phone calls.  Chan has answered Plaintiffs' calls, but has not cooperated with Plaintiffs.  Given the many obstacles that

defendants have created, Plaintiffs hereby move for an enlargement of time for service of the Summons and Complaint on the ground that good cause exists for such an extension.

Additionally, because service by traditional means of service is impracticable, Plaintiffs move this Court for permission to serve the defendants by publication. Plaintiffs have been unable to locate Tom, and Chan has—despite remaining in contact with Plaintiffs by telephone—refused to disclose his location. Tom does not reside at her last known address, Chan cannot be found at his last known residential address, and Plaintiffs do not know the address of Tom or Chan's current place of business (or whether they even have one). Under these circumstances, this Court should permit Plaintiffs to serve Tom and Chan by publication.

## **STATEMENT OF FACTS**

### I.    PROCEDURAL HISTORY

Plaintiffs filed their complaint on May 18, 2007. Under Rule 4(m) of the Federal Rules of Civil Procedure, a defendant must be served with a copy of the summons and complaint within 120 days after the complaint is filed. This 120-day period expired on September 17, 2007. To date, despite their persistent and diligent efforts, Plaintiffs have still been unable to locate and serve Tom or Chan with copies of the summons and complaint.

### II.    FACTUAL BACKGROUND

On or about February 1, 2007, Plaintiffs held a press conference to complain about their employment situation at The Nice Restaurant (the "Restaurant"). (Decl. Luo[1] at ¶ 3.) They were unhappy about their inadequate wages and unpaid overtime and the

---

[1] Declaration of Jian Z. Luo in Support of Plaintiffs' Motions for (1) an Extension of Time for Service of Summons and Complaint; and (2) Service by Publication.

taking of their tips.  They also made plans to file a lawsuit against the Restaurant and its

management.  (Decl. Luo at ¶ 3.)  In response defendant Tom demanded that they not file

the lawsuit.  (Decl. Luo at ¶ 4.)  Tom stated that if Plaintiffs agreed not to sue, she would

pay an out-of-court, aggregate settlement to be distributed to Plaintiffs in or around late

May 2007.  (Decl. Luo at ¶ 4.)  Tom emphatically maintained that she would never pay

Plaintiffs if they did not acquiesce to her demand, went ahead and filed their lawsuit, and

prevailed in court.  (Decl. Luo at ¶ 4.)  Understandably concerned about the Tom's threat,

and chiefly relying on Tom's promise to settle outside court, Plaintiffs agreed in principle

not to file a suit. (Decl. Luo at ¶ 5.)

On May 16, 2007, around the time Plaintiffs were supposed to receive the

aggregate settlement from Tom, she abruptly closed the Restaurant without providing any

prior notice to any of the Plaintiffs.  (Decl. Luo at ¶ 6.)

A.    Service Attempts on Tom.

Prior to filing their Complaint, many of the Plaintiffs had frequently observed

Tom in proximity to her apartment located at 77 Chrystie Street, Apartment 4, New York,

New York 10002.  (Decl. Ho[2] at ¶ 3.)  Indeed, some of the plaintiffs were often asked by

Tom to store Nice Restaurant's documents in the basement of the building at that address.

(Decl. Ho at ¶ 3.)  But soon after Nice Restaurant closed on May 16, 2007, Tom

disappeared and could no longer be found at her apartment.  (Decl. Ho at ¶¶ 7–9, 12–17.)

Plaintiffs even tried contacting Tom's daughter to obtain Tom's location, but were unable

to find Tom's daughter.  (Decl. Ho at ¶ 10.)

---

[2] Declaration of Ming Ho in Support of Plaintiffs' Motions for (1) an Extension of Time
for Service of Summons and Complaint; and (2) Service by Publication.

Immediately upon filing their Complaint on May 18, 2007, Plaintiffs made numerous attempts to serve Tom at her apartment. (Decl. Ho at ¶¶ 12–17.) On each visit, Plaintiffs would ring the doorbell several times, but no one ever answered the door. (Decl. Ho at ¶¶ 12, 14.) Plaintiffs often visited Tom's apartment more than once a day. (Decl. Ho at ¶ 12.) Keen on finding and serving defendant in a timely manner, Plaintiffs even camped outside Tom's residence on several occasions with the hope of serving Tom as she left or returned to her building. (Decl. Luo at ¶ 10.) Still, Plaintiffs never saw any sign of Tom.

Plaintiffs have also been unable to reach Tom by telephone. Prior to the filing of the Complaint, Plaintiffs regularly reached defendant by dialing (212) 226-3191. (Decl. Ho at ¶ 6; Decl. Luo at ¶ 8.) Since the Complaint was filed, however, Plaintiffs have yet to receive an answer to their calls to that number and there is no answering machine or voicemail system. (Decl. Ho at ¶ 7, 14; Decl. Luo at ¶ 9.)

While visiting some relatives in Hong Kong, Plaintiff Ming Ho ("Ho") unexpectedly saw Tom across the street. (Decl. Ho at ¶ 16.) When Tom saw Ho, she immediately ran away. (Decl. Ho at ¶ 16.) Because the streets were so crowded, Ho lost sight of her and was unable to track her down. (Decl. Ho at ¶ 16.)

B.    Service Attempts on Chan.

Similarly, Plaintiffs have been unable to serve or locate Chan. Immediately upon discovering that Tom had closed the Restaurant, plaintiff Xiao Z. Zhang ("Zhang") called Chan to tell him that the Restaurant's former employees would have no choice but to file

a lawsuit against Restaurant and its managers for its illegal conduct.  (Decl. Zhang[3] at ¶ 3.)

Chan stated that he realized that he might be named as a defendant in our lawsuit and

acknowledged that this was a big problem for him.  (Decl. Zhang at ¶ 3.)

    In the middle of May 2007, on a day when Plaintiffs were picketing outside the

closed Restaurant, Chan called Zhang directly by telephone and told him that Plaintiffs

should not target their picketing at the Restaurant's landlord, for the landlord might be

willing to sell Plaintiffs the lease to allow them to reopen the Restaurant and work again.

(Decl. Zhang at ¶ 4.)  Chan said that he would help Plaintiffs find people to invest in the

Restaurant, and that he would accompany Plaintiffs when meeting potential investors.

(Decl. Zhang at ¶ 4.)  By the end of June 2007, Plaintiffs had met with three potential

investors, but the landlord refused to lease them the space.  (Decl. Zhang at ¶ 5.)  After

the landlord's refusal, Chan told Plaintiffs that he could not do anything for them.  (Decl.

Zhang at ¶ 5.)

    Near the end of June 2007, in an effort to serve Chan, plaintiff Jian Z. Luo ("Luo")

called Chan and asked him if he would be willing to pick up the Complaint and Summons

(to accept service of process).  (Decl. Luo at ¶ 19; Decl. Zhang at ¶ 6.)  Chan was non-

responsive to that request.  (Decl. Luo at ¶ 19; Decl. Zhang at ¶ 6.)  Instead, Chan told

Luo that he could not afford to pay the damages Plaintiffs sought in the Complaint.  (Decl.

Luo at ¶ 19; Decl. Zhang at ¶ 6.)  Chan also admitted that any attorney that he could hire

would not be able to help him win the case.  (Decl. Luo at ¶ 19; Decl. Zhang at ¶ 6.)

Chan stated that he would rather give Plaintiffs money than to pay an attorney—an

---

[3] Declaration of Xiao Z. Zhang in Support of Plaintiffs' Motions for (1) an Extension of Time for Service of Summons and Complaint; and (2) Service by Publication.

expense he could not afford—to fight a losing battle.  (Decl. Luo at ¶ 19; Decl. Zhang at ¶ 6.)

Plaintiffs have visited Chan's last known residential address—20 Confucius Plaza, Apartment #27D, New York, New York 10013—numerous times, but Chan was never there.  (Decl. Ho at ¶¶ 18–19.)  On September 14, 2007, some of the plaintiffs and their friends returned in an effort to personally serve Chan.  (Decl. Ho at ¶ 19.)  Plaintiffs rang the doorbell several times but there was no answer.  (Decl. Ho at ¶ 19.)  Plaintiffs' friends taped a copy of the Complaint on the front of his apartment door, mistakenly believing that this was a proper method of service.  (Decl. Ho at ¶ 19.)  Chan then cut off his phone service, and he was no longer reachable by telephone.  (Decl. Zhang at ¶ 7.) Plaintiffs sought one of Chan's friends, hoping that he would be able to locate or speak to Chan.  (Decl. Zhang at ¶ 8.)  Chan eventually called plaintiffs Luo and Zhang to tell them that he was in the western part of the United States, but that he but that he is occasionally in China and sometimes works in New Jersey.  (Decl. Zhang at ¶ 8.)   Plaintiffs also discovered two other properties that were owned by Chan and his wife.  (Decl. Ho at ¶ 22.)  Ho went to both properties to see if Chan could be located and served, but Chan was not at either location.  (Decl. Ho at ¶ 22–23.)

Chan still remains in contact with Plaintiffs by telephone, but he has not disclosed his exact location to allow Plaintiffs to serve him.  (Decl. Zhang at ¶ 10.)  In or around June 2008, Chan called Luo and Zhang to try and settle the case, but the parties could not agree on the terms.  (Decl. Zhang at ¶ 10.)  Zhang called Chan again in late July 2008 to renegotiate with Chan, but the parties again failed to reach an agreement.

**ARGUMENT**

I.    MOTION TO ENLARGE TIME FOR SERVICE OF SUMMONS AND
      COMPLAINT

Rule 4(m) of the Federal Rules of Civil Procedure[4] provides that if a plaintiff does

not serve a defendant with the summons and complaint within 120 days after the

complaint is filed, the court "*must* extend the time for service for an appropriate period"

if "the plaintiff shows good cause for the failure."  FED. R. CIV. P. 4(m) (emphasis added);

*accord Am. Int'l Tel. v. Mony Travel Serv.*, 203 F.R.D. 95, 97 (S.D.N.Y. 2001) (holding

that "[i]f a plaintiff does show good cause the extension is mandatory").

To determine whether good cause exists, a court should consider (1) whether

plaintiffs made a reasonable effort to effect service, and (2) whether there is any

prejudice to the defendants as a result of the delay.  *Osrecovery, Inc. v. One Group Int'l,

Inc.*, 234 F.R.D. 59, 61 (S.D.N.Y. 2005).  Good cause is "generally found only in

exceptional circumstances where the plaintiff[s'] failure to serve process in a timely

manner was the result of circumstances beyond its control."  *E. Refractories Co., Inc. v.

Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505 (S.D.N.Y. 1999).

A.    There Exists Sufficient Good Cause to Justify an Enlargement of Time for
      Service.

As described in better detail above, *supra* at 3–7, both defendants Tom and Chan

have gone to extreme lengths to avoid service of process.  (*See generally* Decl. Ho at ¶¶

1–23; Decl. Luo at ¶¶ 1–22; Decl. Zhang at ¶¶ 1–11.)  The defendants' evasive tactics

support a finding of good cause to justify an enlargement of time for service.  This is

because, as the Advisory Committee's notes make clear, good cause includes instances in

---

[4] All further undesignated references to the Rules refer to the Federal Rules of Civil
Procedure.

which a "defendant is evading service."  Fed. R. Civ. P. 4(m) advisory committee's note;

*accord Finkelman v. New York State Police*, No. 06-CV-8705 (JSR), 2008 WL 821833,

at *3 (S.D.N.Y. Mar. 26, 2008) (quoting the same language from the Advisory

Committee's notes).  Plaintiffs made numerous reasonable attempts to personally serve

defendants Tom and Chan.  Tom has disappeared and it is clear that she does not want to

be found—she is no longer at her last known residential address, (Decl. Ho at ¶¶ 8–17);

she no longer answers her phone, (Decl. Ho at ¶¶ 6–7, 14); and she ran away when a

plaintiff happened to run into her in Hong Kong, (Decl. Ho at ¶ 16).  Chan has also, at

least for the purposes of service of process, disappeared.  Although he remains in contact

with Plaintiffs over the phone, (Decl. Zhang at ¶ 11–12), he has not disclosed his location

and has asked Plaintiffs not to serve him.  (Decl. Luo at ¶¶ 17, 21.)  Chan has, time and

time again, lured Plaintiffs into settlement negotiations, which usually conclude with

Chan asking for more time to deliberate.  (*See, e.g.*, Decl. Zhang at ¶ 6.)  That Chan

engages in these negotiations, acknowledges his liability in Plaintiffs' suit, (Decl. Luo at

¶ 19), but refuses to allow himself to be served demonstrates that he is desperate to delay

the litigation against him and is, therefore, evading service.  Indeed, Chan has explicitly

admitted to this, declaring to Plaintiffs:  "My IQ is very high.  You cannot locate me.

Keep in touch by phone!"  (Decl. Luo at ¶ 21.)

   That Plaintiffs did not hire a professional process server to effectuate service or a

private investigator to locate defendants Tom and Chan does not preclude a finding of

good faith.  Certainly, many courts have found good cause in cases in which a plaintiff

has hired such professionals to effectuate service, *see, e.g.*, *In re Motel 6 Sec. Litig.*, No.

93-Civ.-2183 (JFK), 1995 WL 431326, at *3 (S.D.N.Y. July 20, 1995), but none have

held that such efforts are necessary. Indeed, such a requirement would be, as a matter of policy, undesirable for it would be unduly burdensome for indigent plaintiffs. In this case, such a rule would unjustly reward Defendants for not only illegally underpaying Plaintiffs, (Compl. at ¶¶ 49–84), but also closing Nice Restaurant, (Decl. Ho at ¶ 3; Decl. Luo at ¶ 6; Decl. Zhang at ¶ 3), and, effectively, eliminating Plaintiffs' sole source of income. Although Plaintiffs are not before this Court pro se, this is not fatal to Plaintiffs' claim that good cause exists. Plaintiffs are represented by the undersigned legal counsel on a pro bono basis and their dire financial situations do not allow them to hire professionals to effectuate service of process on the two missing defendants. Given Plaintiffs' financial constraints, they acted reasonably in their service attempts.

Another consideration that tips in favor of a finding of good faith is the fact that Plaintiffs' failure to effectuate service did not result from "mere inadvertence, neglect, or mistake . . . ." *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000). Plaintiffs were unable to serve Tom and Chan only because the defendants evaded service of process, not because of any error or neglect on the part of counsel.

In sum, the exceptional circumstances in this case support a finding of good cause to justify an enlargement of time for service and no factors are present to counsel against such a finding.

B.    Even if this Court Does Not Find Good Cause, it May Nevertheless Enlarge the Time for Service in its Discretion.

Although an extension of time is not mandatory in the absence of good cause, this Court may nevertheless, in its discretion, extend the time to complete service. *See* Fed. R. Civ. P. 4(m) advisory committee's note (stating that Rule 4(m) "authorizes the court to

9

relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown"); *Henderson v. United States,* 517 U.S. 654, 658 n.5 (1996) (noting that Rule 4(m) "permits a district court to enlarge the time for service 'even if there is no good cause shown.'"); *Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 344 (S.D.N.Y. 1996) ("Where good cause is shown, Rule 4(m) requires the Court [to] extend time to serve process.  However, where . . . good cause is not established, a court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." (citation and footnote omitted)).  To justify a discretionary extension, "the plaintiff must ordinarily advance some colorable excuse for neglect."  *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007); *accord Bogle-Assegai v. Connecticut*, 470 F.3d 498, 509 (2d Cir. 2006) (declining to consider plaintiff's argument that she was not required to show good cause because "[i]n any event, [the plaintiff] . . . made no showing whatsoever [sic] as to any effort on her part to effect personal service [,] . . . made no effort to show good cause for her failure and never requested an extension of time [while] the case was pending").  To make this determination, this Court should "consider whether (1) the defendant[s] had actual notice that the plaintiff[s] had filed a claim; (2) the defendant[s] concealed a defect in attempted service; (3) the defendant[s] suffered prejudice as a result of plaintiff[s'] delay; and (4) if the statute of limitations would bar the refiled action."  *Osrecovery, Inc.*, 234 F.R.D. at 62.

Three of these four factors are relevant in this case—the first, third, and fourth— and each tip in favor of granting a discretionary extension of time.  As to the first factor, Tom had reason to know that a lawsuit had been filed against her.  Tom knew that Plaintiffs had convened because they were unhappy about their situation at the Restaurant,

(Decl. Luo at ¶ 3–4.)  Although Plaintiffs agreed in principle not to sue Tom, they did so only in reliance on her representation that she would settle the claims outside of court in May 2007.  (Decl. Luo at ¶¶ 4–5.)  When Tom closed the Restaurant on May 16, 2007—without notifying Plaintiffs—and fled the jurisdiction, Tom had every reason to suspect that Plaintiffs would eventually file the lawsuit that they had contemplated in February.  That Tom ran away immediately upon seeing Ho in Hong Kong lends strong support to the conclusion that Tom had actual notice of the present litigation.  As for Chan, it cannot be disputed that Chan had actual knowledge of this case.  Chan called Luo and asked that Plaintiffs not serve him with the Summons and Complaint.  (Decl. Luo at ¶ 17.)  Chan also spoke directly with Luo and Zhang on numerous occasions in an effort to settle the case.  (Decl. Luo at ¶¶ 19–20; Decl. Zhang at ¶¶ 6, 10, 11.)

As to the third factor, insofar as Tom and Chan have notice of the present litigation and the statute of limitations has not lapsed, *infra* at 13, the defendants have suffered no prejudice resulting from Plaintiffs' inability to serve them.  Again, Plaintiffs have made numerous and reasonable attempts to serve Tom and Chan, but have failed only because defendants have successfully evaded service.  *Supra* at 3–7.  Any prejudice that defendants might claim is a direct result of their own devious conduct.

As to the fourth factor, the statute of limitations has not lapsed with respect to any of Plaintiffs' eight causes of action.  Here, "no useful purpose would be served by dismissing the complaint."  *AIG Managed Mkt. Neutral Fund*, 197 F.R.D. at 109.  A discretionary extension of time to serve is warranted because the only result of dismissal would be that Plaintiffs would simply "refile their complaint, resulting in a waste of judicial resources."  *Id.*

Thus, even if this Court finds that good cause is lacking, the total circumstances in this case justify a discretionary enlargement of time for service.

      C.      <u>That Plaintiffs Improperly Served Defendant Chan Does Not Necessitate Dismissal of the Complaint.</u>

Plaintiffs attempted to serve Chan by posting a copy of the Summons and Complaint to the door of his apartment.  (Decl. Ho at ¶ 17.)  Plaintiffs concede that this did not properly effectuate service.  It does not follow, however, that Plaintiffs' claims against Chan must be dismissed. "Where service has not been proper, the Court has broad discretion either to dismiss the action or to quash the improper service and extend the time for service." *Bender v. Gen. Servs. Admin.,* No. 05-Civ.-6459(GEL), 2006 WL 988241, at \*4 (S.D.N.Y. Apr. 14, 2006); *Zeballos v. Tan*, No. 06-CV-1268 (GEL), 2006 WL 1975995, at \*6 (S.D.N.Y. July 10, 2006) (quoting the same language from *Bender*). In *Bender*, the plaintiff failed to comply with Rule 4(e) and the state rules that Rule 4(e) incorporated, which rendered the service improper.  *Id.* at \*3.  The court, however, did not dismiss the plaintiff's complaint on that basis.  The court found that the "interests of justice counsel[ed] against dismissal, at least for those claims which [we]re not, on their face, manifestly futile." *Id.* at \*4.  Of particular significance to the court was the fact that the defendants had not been prejudiced in any way because they had all received actual notice of the suit.  *Id.*

Here, similarly, Chan has not been prejudiced in any way because he received actual notice of the lawsuit.  *Supra* at 12–13.  That he did is evinced by the fact that Chan asked Plaintiffs not to serve him the Complaint, (Decl. Luo at ¶ 17), and engaged Plaintiffs in several conversations in which he tried to settle the case, (Decl. Zhang at ¶¶

4–11).  Moreover, as Chan has conceded in his conversations with plaintiff Xiao Zhang, Plaintiffs' claims against Chan are not manifestly futile.  (Decl. Zhang at ¶ 6.)

Furthermore, when there is evidence that a defendant is evading service, a plaintiff's improper service attempt can be excused.  *See Zeballos*, 2006 WL 1975995 at *6 (finding significant that there was evidence that the defendant was evading service and accordingly extended plaintiff's time for service by nearly three months).  Because there is overwhelming evidence that Chan is evading service, *supra* at 5–7, Plaintiffs' improper service in September 2007 does not preclude a court from enlarging the time for service.

///

II.    MOTION FOR ALTERNATIVE SERVICE OF SUMMONS AND
COMPLAINT.

"[A]n individual . . . may be served in a judicial district of the United State by: (1)

following state law for serving a summons in an action brought in courts of general

jurisdiction in the state where the district court is located or where service is made . . . ."

FED. R. CIV. P. 4(e).  Plaintiffs may thus serve defendants in any manner prescribed by

New York state law in this action filed in the Southern District of New York.  *See id.*;

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

A.    Because Other Methods of Service are Impracticable, This Court Should
Permit Plaintiffs to Serve Defendants Tom and Chan by Alternative
Means.

Under the New York Civil Practice Law and Rules ("CPLR"), a court may

authorize that personal service be affected upon an individual "in such manner as the

court, upon motion without notice, directs, if service is impracticable under paragraph

one, two, or four of . . . section [308 of the CPLR]."  N.Y. C.P.L.R. 308(5) (McKinney

2001).  Although courts have recognized that the impracticability standard "is not capable

of easy definition," *Liebeskind v. Liebeskind*, 86 A.D.2d 207, 210 (1st Dep't 1982), *aff'd*,

58 N.Y.2d 858 (1983), it is clear that the standard does not require the applicant to satisfy

the more stringent standard of "due diligence" under paragraph 4 of section 308, or even

to make a showing that "actual prior attempts to serve a party under each and every

method in the statute have been undertaken."  *Kelly v. Lewis*, 632 N.Y.S.2d 186, 186 (2d

Dep't 1995).

Here, as explained in detail below, service under paragraph one, two, or four of

Section 308 is impracticable as to both defendants Tom and Chan.

     1.       Personal service is not practicable.

Under paragraph one, service upon an individual may be made by "delivering summons within the state to the person to be served . . . ." N.Y. C.P.L.R. 308(1) (McKinney 2001). As explained in detail above, *supra* at 3–7, Plaintiffs have—despite their numerous and diligent efforts—been unable to serve Tom and Chan in such a manner. Service in the manner prescribed under paragraph one is thus impracticable.

     2.       Substitute service is not practicable.

Under paragraph two, service upon an individual may be made by "delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served . . . ." N.Y. C.P.L.R. 308(2) (McKinney 2001) (the "delivery requirement"). In conjunction with delivery, the summons must be either mailed to the person to be served "at his or her last known residence," or mailed to the person to be served by first class mail "at his or her actual place of business . . . ." *Id.* (the "mailing requirement"). Here, Plaintiffs cannot satisfy the delivery requirement as to either defendant.

As to Tom, Plaintiffs do not know of her current "dwelling place or usual place of abode." (Decl. Ho at ¶ 17; Decl. Luo at ¶ 16.) Although Tom once resided at 77 Chrystie Street, Apartment 4, New York, New York 10002, (Decl. Ho at ¶ 3; Decl. Luo at ¶ 7), she no longer does and has not left a forwarding address with the United States Postal Office. Prior to the filing of the Complaint, Tom transferred her ownership of the apartment to her two children, Stanley and Christine Tom. (Decl. Ho at ¶ 4.) Tom's children, in turn, sold the property. (Decl. Ho at ¶ 5.) Plaintiffs also do not know of Tom's "actual place of business" or whether she even has one—Nice Restaurant is no

longer in business and plaintiffs do not know if Tom is presently engaged in another business.  Plaintiffs therefore cannot deliver the summons and complaint to Tom as required under paragraph two.  Insofar as both the delivery and mailing requirement must be satisfied, and the former cannot be satisfied in this case, service upon Tom in a manner prescribed under paragraph two is impracticable.

As to Chan, Plaintiffs do not know of his current "dwelling place or usual place of abode."  Although Chan once resided at 20 Confucius Plaza, Apartment #27D, New York, New York 10013, (Decl. Ho at ¶¶ 18–19), it is uncertain whether he still does.  Again, every attempt by Plaintiffs to personally serve Chan at that address has been unsuccessful.  If Chan did in fact move, he did not leave a forwarding address with the United States Postal Office.  Plaintiffs also do not know of Chan's "actual place of business."  Although Chan has said that he works in New Jersey, Plaintiffs do not have a definitive address, and Chan has never disclosed his address.  Again, as Chan himself put it:  "My IQ is very high.  You cannot locate me.  Keep in touch by phone!"  (Decl. Luo at ¶ 21.)  Plaintiffs therefore cannot deliver the summons and complaint to Chan as required under paragraph two.  Insofar as both the delivery and mailing requirement must be satisfied, and the former cannot be satisfied in this case, service upon Tom in a manner prescribed under paragraph two is impracticable.

3.    "Nail and mail" service is not practicable.

Under paragraph four, service upon an individual may be made, "where service under paragraphs one or two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served . . . ."  N.Y. C.P.L.R. 308(4)

16

(McKinney 2001) (the "nailing requirement"). In conjunction with nailing, the summons must be mailed to the person to be served "at his or her last known residence" or mailed by "first class mail to the person to be served at his or her actual place of business . . . ." *Id.* (the "mailing requirement"). Here, Plaintiffs cannot satisfy the nailing requirement for the same reasons that they cannot satisfy the mailing requirement under paragraph two. Plaintiffs cannot affix the summons or complaint as required by paragraph two because Plaintiffs do not know of Tom or Chan's "actual place of business, dwelling place or usual place of abode." Insofar as both the nailing and mailing requirement must be satisfied, and the former cannot be satisfied in this case, service upon Tom and Chan in a manner prescribed under paragraph four is impracticable.

Moreover—specifically as to Tom—when a defendant has fled the jurisdiction and resides in an unspecified location in a foreign country, New York courts have concluded that the methods of service under paragraphs one, two, and four of CPLR 308 are impracticable. *See, e.g.*, *Astrologo v. Serra*, 240 A.D.2d 606, 606–07 (2d Dep't 1997); *see also Home Fed. Sav. Bank v. Versace*, 252 A.D.2d 480, 480 (2d Dep't 1998) (service by alternative means is appropriate when a defendant has attempted to evade service).

In sum, service in a manner prescribed under paragraphs one, two, and four of CPLR 308 is impracticable. Plaintiffs have been unable to find out where Tom or Chan live, where they work, or where they might otherwise be served. Under the circumstances, this court should therefore permit plaintiffs to serve defendants Tom and Chan by alternative means pursuant to section 308, paragraph five of the CPLR.

*///*

B.     This Court Should Permit Plaintiffs to Serve Defendants Tom and Chan
       by Publication.

Specifically, Plaintiffs respectfully ask this Court for an order permitting *service by publication*.  This Court has "broad discretion to fashion proper methods of notice in unpredictable circumstances." *See, e.g.*, *Harkness v. Doe*, 261 A.D.2d 846, 847 (4th Dep't 1999) (internal quotations omitted).  "Exercise of that discretion is limited by due process which requires that the method chosen must be reasonably calculated, under all the circumstances, to apprise the defendant of the pending lawsuit."  *Id.* (internal quotations omitted).  Indeed, "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950); *accord Walker v. City of Hutchinson*, 352 U.S. 112, 114 (1956) (recognizing that "in some cases it might not be reasonably possible to give personal notice, for example, where people are missing or unknown").

Even if we assume—for the sake of argument—that Tom and Chan have not received actual notice of the present case, New York courts have held that the mere possibility that a defendant might not receive actual notice pursuant to the court-ordered alternative method of service does not run afoul to the Due Process Clause.  *Dobkin v. Chapman*, 21 N.Y.2d 490, 502 (1968).  "Due process is not . . . a mechanical formula or a rigid set of rules."  *Id.*  All that is required is "a realistic and reasonable evaluation of the respective interest of plaintiffs, defendants and the state under the circumstances of the particular case." *Id.*; *see Walker*, 352 U.S. at 115 ("[I]f *feasible*, notice must be reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests.").  "Undeniably, there are situations in which

18

insistence on actual notice, or even on the high probability of actual notice, would be both unfair to plaintiffs and harmful to the public interest." *Dobkin*, 21 N.Y.2d at 503 (citing *Mullane*, 339 U.S. at 317, 319).

This court may order service of summons by publication pursuant to Section 308(5). 2 WEINSTEIN ET AL., NEW YORK CIVIL PRACTICE: CPLR ¶ 315.02 & 315.03 (2d ed. 2005) ("Service by publication is not limited to the classes of cases designated under CPLR 314 and may also be ordered pursuant to CPLR 308(5)."). "For a court to issue an order of publication under CPLR 308(5) on the ground that service is impracticable . . . the applicant is not required to . . . show actual prior attempts to serve a party under each and every method provided in [CPLR 308]." *Tremont Fed. Sav. and Loan Ass'n v. Ndanusa*, 144 A.D.2d 660, 660 (2d Dep't 1988). Although publication as a means of service is generally discouraged, it is appropriate in a case in which "other, more effective methods of service are futile." 2 WEINSTEIN ET AL., NEW YORK CIVIL PRACTICE: CPLR ¶ 315.03 (2d ed. 2005). As the court in *Dobkin* recognized, in extreme cases, service by publication is reasonable even though the defendant may never receive notice of the action: "Our law has long been comfortable with many situations in which it is evident, as a practical matter, the parties to whom notice is ostensibly addressed would never in fact receive it." 289 N.Y.S.2d at 171; *see also Mullane*, 339 U.S. at 314.

But here, as explained in detail above, Tom and Chan have already received notice of the pending litigation, *supra* at 12–13, so there are no conceivable Due Process concerns. Importantly, this Court "may not ignore the fact that it was no lack of diligence on the [P]laintiffs' part but, rather, the conduct of [Tom and Chan themselves], which prevented them from receiving more direct service of process." *Dobkin*, 21 N.Y.2d at

504.  Because service by other methods would be impracticable, *supra* at 16–18, service by publication is therefore appropriate in this case.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully ask this Court to extend the time for service of Summons and Complaint by sixty (60) days and allow Plaintiffs to serve defendants Tom and Chan by publication.  Plaintiffs are prepared to serve the two defendants by publication pursuant to Section 316 of the CPLR.


Dated: New York, New York

       August 14, 2008

                           ASIAN AMERICAN LEGAL DEFENSE
                              AND EDUCATION FUND


                       By:_____s/_____
                           Kenneth Kimerling
                           99 Hudson Street
                           New York, New York 10013
                           (212) 966-5932

                           Attorneys for Plaintiffs